1  COGBURN LAW OFFICES
   Jamie S. Cogburn, Esq.
2  Nevada Bar No.: 8409
   jsc@cogburnlaw.com
3  9555 S. Eastern Ave., #280
   Las Vegas, NV 89123
4  Tel: (702) 384-3616
   Fax: (702) 943-1936
5
6  LEVI & KORSINSKY, LLP
   Joseph Levi, Esq. *(pending pro hac vice application)*
7  30 Broad Street, 15th Floor
   New York, New York 10004
   Tel: (212) 363-7500
8  Fax: (212) 363-7171

9  Attorneys for Plaintiff

10            **UNITED STATES DISTRICT COURT**

11               **DISTRICT OF NEVADA**

12  VEER GIDWANEY, derivatively on behalf of
    WONDER AUTO TECHNOLOGY, INC.,
13                                              Case No:
14              Plaintiff,
15  v.
16  QINGJIE   ZHAO,   QINGDONG   ZENG,         **VERIFIED SHAREHOLDER**
    LAWRENCE   GOLDMAN,   XIANZHANG           **DERIVATIVE COMPLAINT**
17  WANG,  XIAOYU  ZHANG,  MEIRONG
    YUAN,   YUNCONG   MA,   DAVID
18  MURPHY, AND XINGYE ZHANG,
19
20              Defendants.
    and
21
22  WONDER AUTO TECHNOLOGY, INC.,

23              Nominal Defendant

24          Plaintiff Veer Gidwaney, by and through his undersigned attorneys, brings this action

25  derivatively on behalf of Nominal Defendant Wonder Auto Technology, Inc. ("Wonder Auto" or

26  the "Company") and hereby submits this Verified Shareholder Derivative Complaint (the

27  "Complaint") against certain current and/or former members of its Board of Directors (the

28

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

"Board") seeking to remedy defendants' breaches of fiduciary duties and unjust enrichment from May 14, 2008 to the present (the "Relevant Period").

## NATURE OF THE ACTION

1.      Wonder Auto, through its subsidiaries, engages in the design, development, manufacture, and sale of automotive electrical parts.  The Company's products include automotive electrical parts, safety products, suspension products, and engine accessories. Wonder Auto sells its products to automakers, engine manufacturers and auto parts suppliers in the People's Republic of China ("PRC"), South Korea, and Brazil.

2.      Throughout the Relevant Period, Defendants made materially false and misleading statements concerning Wonder Auto's revenues, earnings, and business operations. Unbeknownst to the public, the Company's financial statements were materially false and misleading because the Company improperly recognized revenue and costs of sales. Additionally, the Company failed to disclose material facts concerning certain related-party transactions.  As a result of Defendants' materially misleading statements and failures to disclose material facts, Wonder Auto's common stock was caused to trade at artificially inflated prices during the Relevant Period.

3.      On March 1, 2011, Wonder Auto announced that the Company's financial statements for fiscal years 2008 and 2009, as well as its interim financial statements for the same periods "should no longer be relied upon due to a cutoff error regarding timing of revenue in such periods."  The Company also confirmed that it will need to provide a restatement of its financial statements for the aforementioned reporting periods.

4.      On March 25, 2011, Wonder Auto further disclosed that it had "received a notification letter from the NASDAQ Stock Market ("NASDAQ") indicating that the Company

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

was not in compliance" with NASDAQ's continued listing requirements by failing to timely file its annual report on Form 10-K for the fiscal year ending December 31, 2010.

5.     NASDAQ subsequently halted trading of Wonder Auto stock on May 6, 2011 as a result of the Company's failure to satisfy NASDAQ's request for additional information and filing requirements.

6.     On May 12, 2011, the Company announced in a press release that its Audit Committee had "undertaken an internal investigation concerning certain investment and acquisition transactions."  Additionally the Company indicated it would not likely submit filings until the investigation is completed.

7.     On May 20, 2011, Wonder Auto announced that it had received a second notification letter from NASDAQ, indicating that the Company was not in compliance with NASDAQ requirements for failure to file its Form 10-Q for the period ending March 31, 2011, as well as its ongoing failure to file its Form 10-K for the fiscal year ending December 31, 2010. The Company also stated that its Audit Committee's investigation will continue until at least June 2011.  Wonder Auto further revealed that the investigation was initiated "in response to a report alleging that the Company had engaged in several transactions without properly disclosing their related-party nature."   As of May 20, 2011, the Company updated the public through a release confirming that the restatement would be filed "due primarily to certain sales cut-off errors and the timing of expenses associated with stock option compensation".

8.      When the truth regarding Defendants' improper conduct was revealed to the market through a series of partial disclosures, the price of Wonder Auto common stock dropped, from $6.66 per share on March 1, 2011 to $5.42 per share on May 6, 2011. The price of the Company's common stock would likely have fallen further had trading in the securities of

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

Wonder Auto not been halted on May 6, 2011, and, should trading resume, the price will likely continue to fall from the $5.42 closing price on May 6, 2011.

9.    Defendants harmed the Company by causing it to issue materially false and misleading statements and omit material facts, resulting in a loss of significant Company value, and by exposing Wonder Auto to federal securities violations.  Indeed, as a result of Defendants' wrongful acts and omissions, Company is now exposed to millions of dollars in defense costs and potential liability.

10.    Plaintiff seeks to recover damages suffered by the Company as a result of the wrongful acts of its directors and officers described herein.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendant are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

12.    Venue is proper in this district because nominal defendant Wonder Auto is incorporated in this District.

## PARTIES

13.    Plaintiff, Veer Gidwaney is a current shareholder of Wonder Auto and has continuously held Wonder Auto stock at all relevant times. Plaintiff is a citizen of New York.

14.    Nominal defendant Wonder Auto is a corporation organized and existing under the laws of Nevada.  Wonder Auto has its principle executive offices located at No. 16 Yulu Street, Taihe District, Jinzhou City, Liaoning Province, People's Republic of China, 12013.

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

15.     Defendant Qingjie Zhao ("Zhao") is, and at all relevant times was, Chief Executive Officer ("CEO"), President,  and Chairman of the Board of Directors of Wonder Auto. Defendant Zhao joined the Company's subsidiary, Jinzhou Halla Electrical Equipment Co. Ltd. ("Jinzhou Halla"), as its Chairman in October 1997.  Defendant Zhao is also an executive director and 10.4% owner of China Wonder Ltd., a company listed on the Alternative Investment Market of the London Stock Exchange, which is principally engaged in the manufacture and sale of specialty packaging machinery to the PRC pharmaceutical market, and an executive director and 11.0% owner of Jinzhou Jinheng Automotive Safety System Co., Ltd., which is principally engaged in the manufacture and sale of automotive airbag safety systems in China. Upon information and belief, Zhao is a resident of China.

16.     Defendant Qingdong Zeng ("Zeng") is Vice President of Wonder Auto since December 2009 and has been a Director of the Company since June, 2010.  Zeng has also served as the Company's Chief Strategy Officer since July 2010, and has been the president of the Company's subsidiary, Jinzhou Wanyou Mechanical Parts Co., Ltd., since September 2006. Upon information and belief, Zeng is a resident of China.

17.     Defendant Lawrence Goldman ("Goldman") is, and at all relevant times was a member of the Board of Directors of Wonder Auto.  Upon information and belief, Goldman is a resident of China.

18.     Defendant Xiaoyu Zhang ("Zhang") is, and has been a member of the Board of Directors of Wonder Auto since April 2009. Upon information and belief, Zhang is a resident of China.

19.     Defendant Xianzhang Wang ("Wang") is, and has been a member of the Board of Directors of Wonder Auto since April 2009. Upon information and belief, Wang is a resident of China.

20.     Defendant Meirong Yuan ("Yuan") was a member of the Board of the Directors of Wonder Auto from 2007 to 2010.  Yuan served as the Company's Chief Financial Officer and Treasurer. Yuan has been the Vice President of Jinzhou Wonder Industrial Co., Ltd and also serves as a director of Jinzhou Halla.  Upon information and belief, Yuan is a resident of China.

21.     Defendant David Murphy ("Murphy") was a member of the Board of Directors of Wonder Auto from 2007 to April 7, 2009. Upon information and belief, Murphy is a resident of China.

22.     Defendant Xingye Zhang ("Xingye") was a member of the Board of Directors of Wonder Auto from 2007 to April 7, 2009.  Upon information and belief, Xingye is a resident of China.

23.     Defendant Yuncong Ma ("Ma") is, and at all relevant times was, the Chief Operating Officer of Wonder Auto.  Defendant Ma has been the General Manager of subsidiary Jinzhou Halla since 1997 and is responsible for Jinzhou Halla's overall operations.   Upon information and belief, Ma is a resident of China.

24.     Defendants are sometimes referred to hereinafter as the Individual Defendants. The Individual Defendants and Wonder Auto are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.     Background

25.     Wonder Auto designs, develops, manufactures, and sells automotive electrical parts. The Company's products include automotive electrical parts, safety products, suspension products, and engine accessories.   These products are used in a range of passenger and commercial automobiles.  Wonder Auto sells the products within the PRC to original equipment manufacturers (OEMs), engine manufacturers, and automotive parts suppliers. The Company's

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

customers include SAIC GM Wuling Automobile Co., Ltd., Beijing Hyundai Motor Company, Shenyang Aerospace Mitsubishi Motors Engine Co., Ltd., Harbin Dongan Automotive Engine Co., Ltd., Shanghai Volkswagen Co., Ltd., BYD Company Limited, Tianjin Toyota Co., Ltd., Geely Automobile Co., Ltd., and Tianjin FAW Xiali Automobile Co., Ltd.

26.    Wonder Auto's accounting policies require that defendants recognize revenue "when the significant risks and rewards of ownership have been transferred to the buyer at the time when the products are put into use by its customers, [when] the sales price is fixed or determinable, and [when] collection is reasonably assured."

27.    Contrary to the Company's own accounting policies, during at least 2008 and 2009, two of the company's large subsidiaries improperly recognized revenues and cost of sales based on usage reports provided by the customers, rather than in accordance with Company policy. The periods covered by the usage reports did not correspond to the financial reporting periods.

28.    Accordingly, as a result of these cut-off errors, revenue, cost of sales and net income for individual financial reporting periods (annually and quarterly) were materially misstated, requiring the Company to restate its previously reported financial results.

29.    In addition to issues arising out of the Company's inaccurately issued financial statements, Wonder Auto is also facing questioning over its failure to disclose details concerning an apparent related-party transaction relating to Wonder Auto's June 2010 acquisition of Vital Glee Development Limited ("Vital Glee").

30.    On June 24, 2010, a subsidiary of Wonder Auto agreed to acquire a 100% equity interest in Vital Glee for approximately $15 million.  Vital Glee is an investment holding company which, through its subsidiary, Jinzhou Lide Shock Absorber Co., Ltd. ("Jinzhou Lide"), engages in the automotive shock absorber manufacturing business.  Jinzhou Lide was formed

just two months prior to the June 2010 Vital Glee acquisition and appears to be located at the same address as another Wonder Auto facility.  Wonder Auto obtained control over Vital Glee on July 1, 2010 by appointing the sole director to Vital Glee.

31.     Although the Vital Glee acquisition was mentioned in the Company's second quarter 2010 Form 10-Q, the second quarter report, as well as future SEC filings, failed to provide any specific details concerning the acquisition.

32.     One research firm raised several concerns regarding the Vital Glee acquisition, including the fact that it is highly unlikely that a subsidiary that has been operating for only two months and located in the same place as another Wonder Auto facility could be worth $15 million.

33.     Even more alarming, Wonder Auto management has not disclosed the identity of Vital Glee's seller.  In fact, according to one research analyst, Wonder Auto's  CEO stated that he has no idea who the seller is.  Thus, the question remains – who owned Vital Glee and who received the claim to $15 million upon its sale.

**II.     Defendants' Materially False and Misleading Statements Issued During the Relevant Period And Other Relevant Period Events**

34.     On May 14, 2008, Wonder Auto issued a press release announcing the Company's financial results for the first quarter ended March 31, 2008.  In the May 14, 2008 press release, the Company reported revenues of $31.1 million, cost of sales of $22.9 million, and net income of $4 million, or $0.15 per diluted share.

35.     The above statements in the May 14, 2008 press release were materially false and misleading because, *inter alia*, the Company:  (1) improperly recognized  revenue and cost of sales; (2) failed to comply with its own revenue recognition and accounting policies; (3) lacked adequate internal and financial controls; and (4) that as a result

COGBURN LAW OFFICES

9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

of the foregoing, the Company's statements were materially false and misleading at all relevant times.

36.     On May 14, 2008, the Company filed its first quarter report on Form 10-Q with the SEC for the period-ended March 31, 2008, signed by Defendant Yuan. The first quarter Form 10-Q included the same materially false and misleading financial statements contained in the May 14, 2008 press release. In addition, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), the first quarter Form 10-Q contained signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

37.     Defendant Zhao affirmed that he had reviewed the report and that "based on [his] knowledge, this report does not contain any untrue statement or a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report".

38.     The above statements in the first quarter Form 10-Q were materially false and misleading for the reasons set forth in paragraph 35.

39.     On August 6, 2008, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2008.  The Company reported sales revenue of $36.7 million, cost of sales of $27.2 million, and net income of $5.3 million, or $0.20 per diluted share. The above statements were materially false and misleading for the reasons set forth in paragraph 35.

40.     On August 7, 2008, the Company filed its second quarter report on Form 10-Q for the period-ended June 30, 2008 with the SEC, which was signed by Defendant Yuan.  The second quarter Form 10-Q contained the same materially false and

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

misleading financial statements as found in the August 6, 2008 press release.  In addition, pursuant to SOX, the Form 10-Q contained identical signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

41.    The above statements in the second quarter Form 10-Q were materially false and misleading for the reasons set forth in paragraph 35.

42.    On November 3, 2008, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2008.  The Company reported sales revenue of $39.3 million, cost of sales of $29.1 million, and net income of $6.4 million, or $0.24 per diluted share. The above statements were materially false and misleading for the reasons set forth in paragraph 35.

43.    On November 4, 2008, the Company filed its third quarter report on Form 10-Q for the period-ended September 30, 2008 with the SEC, which was signed by Defendant Yuan.  The second quarter Form 10-Q represented contained the same materially false and misleading financial statements contained in the November 3, 2008 press release.  In addition, pursuant to SOX, the Form 10-Q contained identical signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

44.    The above statements made in the third quarter Form 10-Q were materially false and misleading for the reasons set forth in paragraph 35.

45.    On March 2, 2009, Wonder Auto issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2008.  For the year, the Company

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

reported sales revenue of $141.2 million and net income of $18.9 million, or $0.70 per diluted share.  The above statements were materially false and misleading for the reasons set forth in paragraph 35.

46.     On March 30, 2009, the Company filed its annual report on Form 10-K for the period ended December 31, 2008 with the SEC, which was signed by Defendants Zhao and Yuan.  The 2008 Form 10-K contained the same materially false and misleading financial statements contained in the March 2, 2009 press release.  In addition, pursuant to SOX, the Form 10-K contained identical signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-K was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

47.     The above statements made in the 2008 Form 10-K were materially false and misleading for the reasons set forth in paragraph 35.

48.     On May 4, 2009, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2009.  The Company reported sales revenue of $40 million, cost of sales of $29.9 million, and net income of $5.2 million, or $0.19 per diluted share, as compared to sales revenue of $31.1 million, cost of sales of $22.9 million, and net income of $4 million, or $0.15 per diluted share for the same period a year ago.  The above statements were materially false and misleading for the reasons set forth in paragraph 35.

49.     On May 6, 2009, the Company filed its first quarter report on Form 10-Q with the SEC for the period ended March 31, 2009, which was signed by Defendant Yuan.  The first quarter 10-Q contained the same materially false and misleading financial statements contained in the May 4, 2009 press release.  In addition, pursuant to SOX, the Form 10-Q contained identical signed certifications by Defendants Zhao and Yuan, stating that the financial

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

50. The above statements in the first quarter Form 10-Q were materially false and misleading for the reasons set forth in paragraph 35.

51. On August 3, 2009, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2009. The Company reported sales revenue of $49.7 million, cost of sales of $37.4 million, and net income of $5.4 million, or $0.20 per diluted share, as compared to sales revenue of $36.7million, cost of sales of $27.2 million and a net income of $5.3 million, or $0.20 per diluted share for the same period a year ago. The above statements were materially false and misleading for the reasons set forth in paragraph 35.

52. On August 4, 2009, the Company filed its second quarter report on Form 10-Q with the SEC for the period ended June 30, 2009, signed by Defendant Yuan. The second quarter Form 10-Q contained the same materially false and misleading financial statements contained in the August 3, 2009 press release. In addition pursuant to SOX, the second quarter Form 10-Q contained identical signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

53. These above statements made in the second quarter Form 10-Q were materially false and misleading for the reasons set forth in paragraph 35.

54. On November 2, 2009, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2009. The Company reported sales revenue of $59 million, cost of sales of $45 million, and net income of $6.5 million, or

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

$0.24 per diluted share, as compared to sales revenue of $39.3 million, cost of sales of $29.1 million, and a net income of $6.4 million, or $0.24 per diluted share for the same period a year ago.  The above statements were materially false and misleading for the reasons set forth in paragraph 35.

55.     On November 2, 2009, the Company filed its third quarter report on Form 10-Q with the SEC for the period ended September 30, 2009, signed by Defendant Yuan.  The third quarter Form 10-Q included the same materially false and misleading financial statements contained in the November 2, 2009 press release,  In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

56.     The above statements made in the third quarter Form 10-Q were materially false and misleading for the reasons set forth in paragraph 35.

57.     On February 11, 2010, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2009.  For the year, the Company reported sales revenue of $211 million and net income of $22.9 million, or $0.82 per earnings share, as compared to sales revenue of $141.2 million and net income of $18.9 million, or $0.70 per diluted share for the same period a year ago. The above statements were materially false and misleading for the reasons set forth in paragraph 35.

58.     On March 4, 2010, the Company filed its annual report on Form 10-K with the SEC for the period ended December 31, 2009, signed by Defendants Zhao and Yuan.  The 2009 10-K included the same materially false and misleading financial statements contained in the February 11, 2010 press release.  In addition, pursuant to SOX, the Form 10-K contained signed certifications by Defendants Zhao and Yuan, stating that the financial

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

information contained in the Form 10-K was accurate, and that they disclosed any material changes to the Company's internal controls over financial reporting.

59.     The above statements in the 2009 10-K were materially false and misleading for the reasons set forth in paragraph 35.

60.     On May 6, 2010, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2010.  The Company reported sales revenue of $63.6 million, cost of sales of $48 million, and net income of $5.8 million, or $0.17 per diluted share, compared to sales revenue of $40 million, cost of sales of $29.9 million, and net income of $5.1 million, or $0.19 per diluted share, for the same period a year ago. The above statements were materially false and misleading for the reasons set forth in paragraph 35.

61.     On May 10, 2010, the Company filed its first quarter report on Form 10-Q with the SEC for the period ended March 31, 2010, signed by Defendant Yuan. The first quarter Form 10-Q included the same materially false and misleading financial statements contained in the May 6, 2010 press release.  In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal controls over financial reporting.

62.     The above statements made in the first quarter Form 10-Q were materially false and misleading for the reasons set forth in paragraph 35.

63.     On August 9, 2010, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2010.   The Company reported sales revenue of $68.5 million, cost of sales of $51.3 million, and net income of $6.6 million, or $0.20 per diluted share, compared to sales revenue of $50 million, cost of sales of $37.4 million, and net income of $5.4 million, or $0.20 per diluted share, for the same period a year

ago.

64.     The Company also disclosed in the August 9, 2010 press release that it had acquired Vital Glee for $15 million on June 24, 2010.  Wonder Auto's CFO has stated that he does not know the identity of the Virtual Glee seller.  The above statements were materially false and misleading for the reasons set forth in paragraph 35. The above statements were also materially false and misleading because they failed to disclose material details surrounding the Vital Glee acquisition.

65.     On August 9, 2010, the Company filed its second quarter report on Form 10-Q with the SEC for the period ended June 30, 2010, signed by Defendant Yuan. The second quarter Form 10-Q included the same materially false and misleading financial statements contained in the August 9, 2010 press release.  In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

66.     The above statements made in the second quarter Form 10-Q were materially false and misleading for the reasons set forth in paragraph 35.  The above statements were also materially false and misleading because they failed to disclose material details surrounding the Vital Glee acquisition.

67.     On November 9, 2010, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2010.  The Company reported sales revenue of $78.8 million, cost of sales of $58.1 million, and net income of $11.9 million, or $0.35 per diluted share, compared to sales revenue of $59 million, cost of sales of $45 million, and net income of $6.5 million, or $0.24 per diluted share, for the same period a year ago.

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

68.     The above statements were materially false and misleading for the reasons set forth in paragraph 35.  The above statements were also materially false and misleading because they failed to disclose material details surrounding the Vital Glee acquisition.

69.     On November 9, 2010, the Company filed its third quarter report on Form 10-Q with the SEC for the period ended September 30, 2010, signed by Defendant Yuan. The third quarter Form 10-Q included the same materially false and misleading financial statements contained in the November 9, 2010 press release.  In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

70.     The above statements made in the third quarter Form 10-Q were materially false and misleading for the reasons set forth in paragraph 35.  The above statements were also materially false and misleading because they failed to disclose material details surrounding the Vital Glee acquisition.

71.     On November 23, 2010, the Company estimated that its 2011 revenue would be between $445-$455 million "based upon management's analysis of market trends and the audited financial statements of  Wonder Auto's newly acquired subsidiary, Jinheng (BVI) Ltd. ("Jinheng BVI") among other factors." These statements were false and misleading for the reasons set forth in paragraph 35.

72.     On December 6, 2010, the Company announced the appointment  of PricewaterhouseCoopers' Zhong Tian CPAs Limited Company ("PWC Zhong Tian") as the Company's independent accountants for audit work for the year ended December 31, 2010 and first three quarters of 2011.

/ / /

III.    **Wonder Auto Reveals Material Inaccuracies in the Company's Financial Reporting**

73.     On March 1, 2011, Wonder Auto issued a press release disclosing that the Company's previously issued financial statements for the years 2008 and 2009, as well as its interim reports issued during the same period, "should no longer be relied upon due to a cutoff error regarding timing of revenue in such periods".  The Company confirmed that it will need to provide a restatement of its financial statements for the aforementioned reporting periods. Although Wonder Auto has historically recognized sales of its products "when the significant risks and rewards of ownership have been transferred to the buyer at the time when the products are put into use by its customers, [when] the sales price is fixed or determinable, and [when] collection is reasonably assured."  The Company revealed that this was not the case for fiscal years 2008 and 2009, and thus, inaccuracies exist within reports for this period.  The press release stated in relevant part:

> During 2008 and 2009, two of the company's significant subsidiaries recorded period sales and cost of sales based on when usage reports were provided by the customers. The periods covered by the usage reports, however, did not always exactly correspond to the financial reporting periods. As a result of these cut-off errors, sales cost of sales and net income for individual financial reporting periods (annually and quarterly) have been misstated. The Company and its subsidiaries are implementing accounting procedures designed to permit the Company to report its financial results consistent with U.S. Generally Accepted Accounting Principles ("GAAP"). As a result of these changes, the Company's revenue for 2008 and 2009 is expected to increase from what previously was reported as a result of the shifting of revenue from 2009 to 2008 and from 2010 to 2009. The Company's net income for 2009 and 2008 also are expected to increase as a result of these changes. In addition, the Company continues to expect to meet the previously announced guidance for revenue and profit in its press release dated November 9, 2010.

74.     On March 17, 2011, the Company notified the SEC that it would not be able to provide a timely filing of its Form 10-K within the requisite deadline.

COGBURN LAW OFFICES

9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COGBURN LAW OFFICES**
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

75.     On March 25, 2011, Wonder Auto disclosed that it had "received a notification letter from the NASDAQ Stock Market indicating that the Company was not in compliance" with NASDAQ's continued listing requirements by failing to provide a timely filing of an annual report on a Form 10-K for the fiscal year ended December 21, 2010.

76.     On May 6, 2011, the NASDAQ halted trading of the Company's stock at $5.42 for Wonder Auto's failure to satisfy its requests for additional information and filing requirements.

77.     On May 12, 2011, the Company issued a press release announcing that its Audit Committee "has undertaken an internal investigation concerning certain investment and acquisition transactions." The Company further stated that it "does not expect that its filings will be completed until the completion of the investigation."

78.     On May 20, 2011, the Company announced that the Audit Committee's investigation will continue at least through June 2011. Moreover, the Company disclosed that the investigation was commenced "in response to a report alleging that the Company had engaged in several transactions without properly disclosing their related-party nature." The Company issued further clarifications about the pending restatement:

> Although the Company's work on the restatement is not complete, at this time it is expected that the restatement will be due primarily to certain sales cut-off errors and the timing of expenses associated with stock option compensation. The restatement also includes adjustments to costs of sales associated with the sales cut-off error and other adjustments. None of the amounts have been finalized at this point as the restatement has not been completed. However, based on the information currently available, it is expected that the net effect of the restatement will be to increase reported net income in 2008 and 2009.

79.     When Defendants' misrepresentations and fraudulent conduct was disclosed to the market, the price of Wonder Auto common stock fell nearly twenty percent.

80.     As a result of Defendants' breaches of fiduciary duty and other misconduct, the price of the Company's stock has still not recovered.

81.     Accordingly, Wonder Auto has been damaged.

## DERIVATIVE ALLEGATIONS

82.     Plaintiff brings this action derivatively on behalf of and for the benefit of Wonder Auto to redress injuries suffered and yet to be suffered, by it as a direct and proximate result of the breaches of fiduciary duties alleged herein.  The Company is a nominal defendant named solely in a derivative capacity.

83.     Plaintiff purchased shares of Wonder Auto and continues to hold such shares today.  Thus, Plaintiff was a Wonder Auto shareholder during the wrongdoing complained of herein.

84.     Plaintiff will fairly and adequately represent the interests of the Company, and has retained competent counsel experienced in derivative litigation to enforce and prosecute this action.

85.     The wrongful acts complained of herein subject, and will persist in subjecting Wonder Auto to continuing harm because the adverse consequences of the injurious actions are still in effect and ongoing.

## DEMAND IS FUTILE

86.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

87.     At the time of the filing of this action, Wonder Auto's Board of Directors is composed of five (5) Directors.

88.     Each of these directors has been named as a defendant in this action and was a director during the time period when Wonder Auto is alleged to have artificially inflated its stock

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

price by issuing materially false and/or misleading statements in the Company's public filings and press releases.

89.     The Defendants owed a duty to Wonder Auto and its shareholders to be reasonably informed about business and operations of the Company.  The Defendant completely abdicated their oversight duties to the Company by failing to implement internal procedures and controls necessary to prevent the wrongdoing alleged herein.

90.     Plaintiff did not make a demand on the Company's board prior to instituting this action because the wrongful acts complained of herein evidence a pattern of conduct showing a wholesale abandonment of their fiduciary duties, including the duty to exercise oversight, due care, and diligence. Demand is excused because the Board has exhibited antipathy towards investigation or prosecuting corporate wrongdoing in appointing its hopelessly conflicted Audit committee to investigate the wrongdoing.

91.     These acts, which demonstrate a pattern of misconduct, were not, nor could they have been, the product of a valid or good faith exercise of business judgment.

92.     Demand is excused because the Board either knew about or should have inquired into the Company's manipulative actions relating to the issuance of false and/or materially misleading information to the public by means of SEC filings and press releases.

93.     Accordingly, the Defendants cannot exercise independent objective judgment in deciding whether to bring this action because they are personally interested in the outcome of this lawsuit as it is their actions which have subjected Wonder Auto to liability.

**FIRST CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty and Disseminating False and Misleading Information)**

94.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

95.     As alleged in detail herein, each of the Defendants as Directors of the Company had a duty to ensure that Wonder Auto disseminated accurate, truthful and complete information to its shareholders.

96.     Defendants violated their fiduciary duties of care, loyalty, and good faith by causing or allowing the Company to disseminate to its shareholders materially misleading and inaccurate information through, *inter alia*, SEC filings and other public statements and disclosures as detailed herein. These actions could not have been a good faith exercise of prudent business judgment.

97.     As a direct and proximate result of Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

## SECOND CLAIM FOR RELIEF
### (Breach of Fiduciary Duties for Failing to Maintain Controls)

98.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

99.     As alleged herein, each of the Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that the Company's financial statements were prepared in accordance with GAAP, and, when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

100.     Defendants willfully ignored the obvious and pervasive problem with Wonder Auto's internal controls practices and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

101.     As a direct and proximate result of the Defendants' foregoing breaches of fiduciary duties, the Company has sustained damages.

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

### THIRD CLAIM FOR RELIEF
**(Breach of Fiduciary Duties for Failing to Properly Oversee and Manage the Company)**

102.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

103.    Defendants owed and owe Wonder Auto fiduciary obligations. By reason of their fiduciary relationships, Defendants specifically owed and continues to owe Wonder Auto the highest obligation of good faith, fair dealing, loyalty and due care.

104.    Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

105.    As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, Wonder Auto has sustained significant damages, not only monetarily, but also to its corporate image and goodwill.

106.    As a result of the misconduct alleged herein, Defendants are liable to the Company.

107.    Plaintiff, on behalf of Wonder Auto, has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
**(Unjust Enrichment)**

108.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

109.    By their wrongful acts and omissions, the Defendants were unjustly enriched at the expense of and to the detriment of Wonder Auto.

110.    Plaintiff, as a shareholder and representative of Wonder Auto, seeks restitution from these Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

**FIFTH CLAIM FOR RELIEF**
**(Abuse of Control)**

111.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

112.   Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Wonder Auto, for which they are legally responsible. In particular, Defendants abused their positions of authority by causing or allowing Wonder Auto to misrepresent material facts regarding its financial position and business prospects.

113.   As a direct and proximate result of Defendants' abuse of control, Wonder Auto has sustained significant damages.

114.   As a result of the misconduct alleged herein, Defendants are liable to the Company.

115.   Plaintiff, on behalf of Wonder Auto, has no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF**
**(Gross Mismanagement)**

116.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

117.   Defendants had a duty to Wonder Auto and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Wonder Auto.

118.   Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Wonder Auto in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, Defendants breached their duties of due

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

care, diligence and candor in the management and administration of Wonder Auto's affairs and in the use and preservation of Wonder Auto's assets.

119.   During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Wonder Auto to engage in the scheme complained of herein which they knew had  an unreasonable risk of damage to Wonder Auto, thus breaching their duties to the Company.  As a result, Defendants grossly mismanaged Wonder Auto.

## SEVENTH CLAIM FOR RELIEF
### (Waste of Corporate Assets)

120.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

121.   As a result of the misconduct described above, and by failing to properly consider the interests of the Company and its public shareholders, Defendants have caused Wonder Auto to incur (and Wonder Auto may continue to incur) significant legal liability and/or legal costs to defend itself as a result of Defendants' unlawful actions.

122.   As a result of this waste of corporate assets, Defendants are liable to the Company.

123.   Plaintiff, on behalf of Wonder Auto, has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff prays for relief and judgment, as follows:

A.   Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B.   Directing Wonder Auto to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including,

but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

C.      Awarding to Wonder Auto restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

D.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses;

E.      Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims set forth herein.

Dated:  July 1, 2011

**COGBURN LAW OFFICES**

_/s/_ Jamie Cogburn
Jamie S. Cogburn, Esq.
Nevada Bar No. 8409
9555 S. Eastern Ave., Suite 280
Las Vegas, NV 89123
Telephone: (702) 384-3616
Telecopier: (702) 943-1936

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins, Esq.
Allen Schwartz, Esq.
30 Broad Street, 15th Floor
New York, New York 10004
Telephone: (212) 363-7500
Telecopier: (212) 363-7171

_Attorneys for Plaintiff Veer Gidwaney_

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616  FAX:(702) 943-1936